## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

SANJAY ISRANI, individually, and on behalf of all
others similarly situated,

                      Plaintiff,

                v.

ALAN L. WELLS, KENNETH R. COLE,
NORMAN C. FROST, BRIAN  G. HART, H. LYNN
HORAK, CRAIG A.  LANG AND KENDRIK E.
PACKER, IOWA TELECOMMUNICATIONS
SERVICES, INC., and WINDSTREAM
CORPORATION,

                    Defendants.

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

**Case No. _____09-514_____**

## CLASS ACTION COMPLAINT

       Plaintiff, by his attorneys, alleges upon personal knowledge as to his own acts and upon

information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

       1.    This is a stockholders' class action lawsuit brought on behalf of the public

stockholders of Iowa Telecommunications Services, Inc. ("Iowa Telecom" or the "Company")

who have been, and continue to be, deprived of the opportunity to realize fully the benefits of

their investment in the Company.

## JURISDICTION

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that Plaintiff is a citizen of a state different from any defendant and the amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs.

3.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a) in that Defendant Iowa Telecom does business in this district and the events giving arise to this claim occurred in this district.

## PARTIES

*Plaintiff*

4.      At all times material hereto, Plaintiff Sanjay Israni was a citizen and resident of New Jersey.  Plaintiff is, and, at all relevant times, has been, the owner of shares of Iowa Telecom common stock.

*Defendants*

5.      Defendant Alan L. Wells ("Wells") has been Chief Executive Officer of Iowa Telecom and Chairman of the board of directors since 2002.  Based upon information and belief, Wells is a citizen of Florida.

6.      Defendant Kenneth R. Cole ("Cole") has been a director since April 2008.  Based upon information and belief, Cole is a citizen of Texas.

7.      Defendant Norman C. Frost ("Frost") has been a director since March 2006.  Based upon information and belief, Frost is a citizen of Maryland.

8.      Defendant Brian G. Hart ("Hart") has been a director since November 2005.  Based upon information and belief, Hart is a citizen of Iowa.

9.      Defendant H. Lynn Horak ("Horak") has been a director since April 2007.  Based upon information and belief, Horak is a citizen of Iowa.

10.    Defendant Craig A. Lang ("Lang") has been a director since August 2005 and serves as the Company's lead director.  Based upon information and belief, Lang is a citizen of Iowa.

11.    Defendant Kendrik E. Packer ("Packer") has been a director since August 2005. Based upon information and belief, Packer is a citizen of Iowa.

12.    Iowa Telecom is an Iowa corporation with its principal place of business in Newton, Iowa.  Iowa Telecom provides telephone services to over 450 communities across the state.  As of October 16, 2009, Iowa Telecom had approximately 32,806,162 shares of common stock outstanding.  Iowa Telecom stock trades on the New York Stock Exchange.

13.    Defendants Alan L. Wells**,** Kenneth R. Cole**,** Norman C. Frost**,** Brian  G. Hart**,** H. Lynn Horak**,** Craig A.  Lang and Kendrik E. Packer are Directors of Iowa Telecom and are collectively referred to throughout this complaint as the "Individual Defendants."

14.    The Individual Defendants, by reason of their corporate directorship or executive positions, stand in a fiduciary position relative to the Company's shareholders, which fiduciary relationship, at all times relevant herein, required the Individual Defendants to exercise their best judgment, and to act in a prudent manner and in the best interests of the Company's shareholders.

15.    Defendant  Windstream  Corporation  is  a  Delaware  corporation  and  is headquartered in Little Rock, Ark.  Windstream offers phone, broadband and digital TV services.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this case on his own behalf and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of all stockholders of the Company, except Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

with any of the Defendants, who will be threatened with injury arising from Defendants' actions as are described more fully below (the "Class").

17.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.  The Company has thousands of stockholders who are scattered throughout Iowa and the rest of the United States.  According to the Company's 10-Q filed with the SEC on October 29, 2009, as of October 16, 2009, Iowa Telecom had approximately 32,806,162 shares of common stock outstanding.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including:

(a)     Whether the terms of the Proposed Merger are unfair to Plaintiff and the Class;

(b)     Whether the Individual Defendants breached fiduciary duties owed by them to Plaintiff and the members of the Class; and

(c)     Whether Plaintiff and the Class have suffered damages thereby.

19.     Plaintiff is committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Plaintiff is thus an adequate Class representative.

20.     This class action is the superior method for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive

4

of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

21.    Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

22.    The Individual Defendants, by reason of their corporate directorships or executive positions, are fiduciaries to and for the Company's stockholders.  Their fiduciary relationships to Plaintiff and the Company's other public stockholders impose upon them the highest obligations of good faith, fair dealing, due care, loyalty, and candor, including full and complete disclosure. As fiduciaries, the Individual Defendants must also exercise their best judgment, in the best interests of the Company and its stockholders.

23.    Whenever the directors or officers of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control, (ii) a break-up of the corporation's assets or (iii) a sale of the Company, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's stockholders, and if such transaction will result in a change of corporate control, the stockholders are entitled to receive a significant premium.

24.    Accordingly, to diligently comply with their fiduciary duties owed to Iowa Telecom and its stockholders, the Individual Defendants may not take any action that:

(a)    adversely affects the value provided to the Iowa Telecom's stockholders;

(b)    discourages or inhibits alternative offers to purchase control of the Iowa Telecom or its assets;

(c)    prohibits them from complying with their fiduciary duties;

(d)    otherwise adversely affects their duty to search and secure the best value reasonably available under the circumstances for the Iowa Telecom's stockholders; or

(e)    provides them with preferential treatment at the expense of, or separate from, Iowa Telecom's public stockholders.

25.    In accordance with their fiduciary duties, the Individual Defendants are also obligated to refrain from:

(a)    participating in any transaction where their loyalties are divided;

(b)    repelling other offers or value-maximizing alternatives for Iowa Telecom;

(c)    participating in any transaction in which the directors and/or officers receive or are entitled to receive a personal financial benefit not equally shared by the public stockholders of Iowa Telecom; or

(d)    unjustly enriching themselves at the expense or to the detriment of Iowa Telecom's public stockholders.

26.    The Individual Defendants were and are required to act in furtherance of the best interests of Iowa Telecom stockholders, to maximize stockholder value in the sale of the Company, and to refrain from abusing their positions of control for their own personal gain or benefit at the expense of the Company or its stockholders.

## SUBSTANTIVE ALLEGATIONS

27.    On November 24, 2009, Windstream Corporation agreed to acquire Iowa Telecommunications Services, Inc. ("Iowa Telecom"), for approximately $1.1 Billion (the "Proposed Merger").

28.    Under the terms of the transaction, Iowa Telecom shareholders will receive .804 shares of Windstream stock and $7.90 in cash – the equivalent of $16.04 per share as of November 23, 2009, the day before the deal was announced – a 26% premium over the closing

share price of the Company prior to the announcement.

29.     The offer price is inadequate considering Iowa Telecom's bright prospects. Indeed, Windstream described the Company's solid financials in a presentation to its shareholders dated December 1, 2009. Iowa Telecom has strong EBITDA margins and a high free cash flow conversion. This large amount of available cash will surely inure to the benefit of Windstream, while the Iowa Telecom shareholders are in danger of not receiving sufficient value for their shares. Windstream will also benefit from Federal Net Operating Losses of approximately $157 million that are not set to expire until at the earliest 2021. This significantly lowers the cost of the Proposed Merger to Windstream.

30.     Even though there are no assurances that the offer price is adequate, the Company entered into a Merger Agreement with Windstream on November 23, 2009 (the "Merger Agreement"), which contains materially unfair deal protections that will prevent an alternative bidder from offering a superior transaction.

31.     Moreover, Defendants agreed to such terms without any hard evidence that they sought a third party buyer for Iowa Telecom and no evidence that the Individual Defendants shopped the Company or otherwise took steps in order to obtain the best possible (higher) price for Iowa Telecom's shareholders.

32.     The Merger Agreement contains a strict "no shop" provision prohibiting the members of the Iowa Telecom Board from taking any affirmative action to comply with their fiduciary duties to maximize shareholder value, including soliciting proposals relating to alternative tender offer or business combinations.

33.     Its "No-Shop" clause does not permit the Company or its directors to canvass the market for other bids, nor does it allow the Company or its directors to even discuss a potential

deal with a third party:

> The Company shall not, nor shall it permit any of its Subsidiaries to, nor shall it authorize or permit any officer, director or employee of, or any investment banker, attorney or other advisor or representative of, the Company or any of its Subsidiaries to, (i) solicit or initiate, encourage, or facilitate or induce, directly or indirectly, any inquiries relating to, or the submission of, any proposal or offer, whether in writing or otherwise, from any Person other than Parent, Merger Sub or any Affiliates thereof (a "Third Party") to acquire beneficial ownership (as determined under Rule 13d-3 of the Exchange Act) of all or more than fifteen percent (15%) of the assets of the Company and its Subsidiaries, taken as a whole, or fifteen percent (15%) or more of any class of equity securities of the Company or any of its Subsidiaries pursuant to a merger, consolidation or other business combination, sale of shares of stock, sale of assets, tender offer, exchange offer or similar transaction or series of related transactions, which is structured to permit such Third Party to acquire beneficial ownership of more than fifteen percent (15%) of the assets of the Company and its Subsidiaries, taken as a whole, or fifteen percent (15%) or more of any class of equity securities of the Company or any of its Subsidiaries (a "Competing Transaction"); (ii) participate in any discussions or negotiations regarding any Competing Transaction, or furnish to any Person any information or data with respect to or access to the properties of the Company or any of its Subsidiaries in connection with a Competing Transaction, or take any other action to knowingly facilitate the making of any proposal that constitutes, or may reasonably be expected to lead to, any Competing Transaction; or (iii) enter into any agreement, arrangement or understanding with respect to any Competing Transaction, approve, endorse or recommend or resolve to approve or recommend any Competing Transaction, or enter into any agreement requiring it to abandon, terminate or fail to consummate the Merger and the other transactions contemplated by this Agreement.

34.    The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Director Defendants from even engaging in discussions or negotiations relating to proposals regarding alternative business combinations.

35.    Indeed, the only way in which the Company is permitted discuss a competing transaction would be if it received a superior written offer and even then it is subject to unduly burdensome restrictions.  The Company must determine that the offer is reasonably likely to result in a more favorable proposal than the Proposed Merger, and that the potential transaction is likely to be consummated.  It must decide all of this without even speaking to the third party:

> [I]f, prior to the receipt of shareholder approval of this Agreement, the Company receives a bona fide, written proposal or offer for a Competing Transaction (for purposes of this sentence the references to "15%" in the definition of "Competing Transaction" shall be deemed to be references to "50%") by a Third Party, which the Company Board determines in good faith (after consulting the Company Board's independent financial advisor and outside legal counsel) (A) is reasonably likely to result in terms that are more favorable from a financial point of view to the holders of shares of Company Capital Stock than the Merger and the other transactions contemplated by this Agreement, and (B) is reasonably capable of being consummated (provided, that the Company, including the Company Board, and any of its advisors, shall be permitted to contact such Third Party and its advisors solely for the purpose of clarifying the proposal and any material contingencies and the capability of consummation) (a "Superior Competing Transaction"), then the Company may, in response to an unsolicited request therefor and subject to compliance with Section 6.2(b), furnish information with respect to the Company and its Subsidiaries to, and participate in discussions and negotiations directly or through its representatives with, such Third Party.

36.    Its so-called "fiduciary out" clause is insufficient to ensure the Individual Defendants' compliance with their fiduciary duties because it impermissibly limits their exercise of duties.  Before even discussing the competing offer with the third party, it must give Windstream notice of the offer, and 72 hours in which to negotiate a better deal.  It may only negotiate with the third party if, at the end of this 72 hour period, Windstream's revised proposal still does not constitute a better proposal than the third-party's offer:

In the event that prior to receipt of shareholder approval of this Agreement, the Company Board determines that it has received a proposal for a Superior Competing Transaction and determines in good faith (after consultation with its outside legal advisor) that taking any or all of the following actions is necessary in order to comply with its fiduciary duties under applicable Law, and provided, that neither the Company nor any representative of the Company has breached any of the provisions of this Section 6.2, the Company and the Company Board may withdraw, modify or change the Company Board's approval or recommendation of this Agreement or the Merger, provided, that, prior to doing so, (A) the Company shall deliver written notice to Parent (a "Competing Transaction Notice") advising Parent that the Company and the Company Board intend to take such action(s) and specifying the reasons therefor, including the material terms and conditions of any Superior Competing Transaction that is the basis of the proposed action by the Company and the Company Board, (B) during the 72 hour period following delivery of the Competing Transaction Notice to Parent (the "Notice Period"), the Company shall, and shall direct its financial advisors and outside legal advisors to, negotiate with Parent in good faith (to the extent Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement so that, if applicable, such Competing Transaction ceases to constitute (in the judgment of the Company Board, after consultation with its financial advisors and outside legal advisors), a Superior Competing Transaction, and (C) the Company Board shall have determined in good faith, after considering the results of such negotiations and giving effect to the proposals made by Parent, if any, that such Competing Transaction continues to constitute a Superior Competing Transaction.

37.     Consequently, this provision effectively prevents the Company and the Individual Defendants from exercising their fiduciary duties and precludes an investigation into competing proposals unless, as a prerequisite, the majority of the Iowa Telecom Board first determines that the proposal is superior.

38.     The Merger Agreement also has a clause which forces the potential purchase of Iowa Telecom to a vote, even if management and the Board withdraws its recommendation for the Proposed Merger to its shareholders:

> Notwithstanding any change by the Company Board of its recommendation, the Company shall cause the approval and adoption of this Agreement to be submitted to a vote of the Company's shareholders at the Shareholders Meeting.

39. In addition to the no-shop and standstill provisions as well as the overly restrictive fiduciary-out and forced vote, the Merger Agreement includes a $25,000,000 termination fee that in combination will all but ensure that no competing offer will be forthcoming.

40. There also is a danger of breaches of the Company's fiduciary duties pursuant to Iowa Code §409.1108A, which requires the Individual Defendants to consider the interests of the Company's employees and the surrounding community.

41. There is no guarantee that the headquarters in Newton, Iowa will remain open for business. The Company recently purchased two Minnesota telecommunications companies, and there is reason to believe it won't keep its presence in Newton, Iowa.

42. And, in Windstream's November 24, 2009 press release, the Employee Q&A indicated that the employees should consult their supervisors about continuing on major projects. This too, indicates that there is the potential for a significant loss of jobs in the Newton area thus affecting hundreds of jobs, local businesses and the local economy.

43. A November 24, 2009 *Associated Press* article by Chuck Bartels discussing the effects of the Proposed Merger confirmed these suspicions by stating that job cuts are likely.

44. Thus, there is a danger of a situation similar to the acquisition of Maytag by Ripplewood where despite promises of retaining a presence in Iowa, myriad jobs were lost as a result of the merger.

45. The Iowa community will suffer even further damage because the reduced competition for telephone services will inherently increase the cost for these services.

46. The Individual Defendants, however, contrary to their fiduciary obligations to the

public shareholders, authorized impermissible deal protections, and disregarded their duties to the community.

47.    In addition, the Individual Defendants have the responsibility to act independently so that the interests of the Company's public stockholders will be protected and to consider properly all *bona fide* offers for the Company.  Further, the directors of Iowa Telecom must adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations to maximize stockholder value or, if such conflicts exist, to insure that all such conflicts will be resolved in the best interests of the Company's stockholders.

48.    Here, Defendant Allen is clearly conflicted.  As a result of his change in control agreement, he stands to receive $3.5 million in change and control payments after the Proposed Merger is consummated.

49.    Defendants owe fundamental fiduciary obligations to Iowa Telecom stockholders to take all necessary and appropriate steps to maximize the value of their shares. In addition, the Individual Defendants have the responsibility to act independently so that the interests of the Company's public stockholders will be protected and to consider properly all *bona fide* offers for the Company.  Further, the directors of Iowa Telecom must adequately ensure that no conflict of interest exist between the Individual Defendants' own interests and their fiduciary obligations to maximize stockholder value or, if such conflicts exist, to insure that all such conflicts will be resolved in the best interests of the Company's stockholders.

50.    The Individual Defendants' failure to properly shop the Company, simply evidences their disregard for obtaining the best price for Iowa Telecom shareholders.  By failing

to properly pursue all offers, the Individual Defendants are depriving Plaintiff and the other members of the Class of the right to receive the maximum value for their shares.

51.     Because Defendants dominate and control the business and corporate affairs of Iowa Telecom and because they are in possession of private corporate information concerning Iowa Telecom assets, businesses, and future prospects, there exists an imbalance and disparity of knowledge of economic power between Defendants and Iowa Telecom's public stockholders – including Plaintiff and the other members of the Class. This discrepancy makes it grossly and inherently unfair for Defendants at the expense of Iowa Telecom stockholders.

52.     The Individual Defendants have breached their fiduciary and other common law duties owed to Plaintiff and other members of the Class in that they have not and are not exercising independent business judgment and have acted and are acting to the detriment of the Class.

53.     Plaintiff seeks preliminary and permanent injunctive relief and declaratory relief preventing Defendants from inequitably and unlawfully depriving Plaintiff and the other members of the Class of their rights to realize a full and fair value for their stock at a premium over the market price, by unlawfully favoring themselves over the public shareholders, and to compel Defendants to carry out their fiduciary duties to maximize shareholder value.

54.     Only through the exercise of this Court's equitable powers can Plaintiff and the other members of the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

55.     Unless enjoined by the Court, Defendants will continue to breach the fiduciary duties they owe to Plaintiff and the other members of the Class, or aid, abet, and participate in such breaches of duty, and will prevent the sale of Iowa Telecom at a substantial premium, or

any premium still available, all to the irreparable harm of Plaintiff and the other members of the Class and the community at large.

56.     Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### CLAIM AGAINST THE INDIVIDUAL DEFENDANTS
### AND IOWA TELECOM FOR BREACH OF FIDUCIARY DUTIES

57.     Plaintiff repeats and realleges each allegation set forth herein.

58.     The Individual Defendants are knowingly or recklessly and in bad faith violating fiduciary duties of care, loyalty, good faith, candor and independence owed to the public shareholders of Iowa Telecom and have acted to put their personal interests ahead of the interests of Iowa Telecom shareholders.

59.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as a part of a common plan, have acted knowingly or recklessly and in bad faith.

60.     The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by approving the Proposed Merger without regard to the fairness of the transaction to Iowa Telecom shareholders and by failing to take into account the needs of the community.

61.     As demonstrated by the allegations above, the Individual Defendants are knowingly or recklessly failing to exercise the care required, and breaching their duties of loyalty, good faith, candor and independence owed to the shareholders of Iowa Telecom because, among other reasons they have taken steps to avoid competitive bidding and to cap the price of Iowa Telecom by, among other things, including impermissible lock-up provisions in the Merger Agreement.

14

62.     Because the Individual Defendants dominate and control the business and corporate affairs of Iowa Telecom, and are in possession of private corporate information concerning Iowa Telecom's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Iowa Telecom which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

63.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants are knowingly or recklessly and in bad faith failing to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

64.     Unless enjoined by this Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Merger which will exclude the Class from its fair share of Iowa Telecom's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class.

65.     As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class are being harmed in that Individual Defendants will deprive Plaintiff and the entire Class of a fair sale process.  Unless the Proposed Merger is enjoined by the Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Merger terms and may consummate the Proposed Merger, all to the irreparable harm of the members of the Class.

66.    Plaintiff and the members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## COUNT II

### CLAIM AGAINST WINDSTREAM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES

67.    Plaintiff repeats and realleges each allegation set forth herein.

68.    As alleged in more detail above, Windstream is well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders. Defendant Windstream aided and abetted the Individual Defendants' breaches of fiduciary duties.

69.    As a result, Plaintiff and the Class members are being harmed.

70.    Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative;

B.    Declaring that defendants have breached their fiduciary and other duties to Iowa Telecom, Plaintiff and the other members of the Class;

C.    Enjoining defendants from consummating the Proposed Merger;

D.    Entering an Order requiring defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Iowa Telecom and its shareholders by announcing their intention to:

(i)    Cooperate fully with any entity or person, including any rival, having a bona fide interest in proposing any transactions that would maximize

16

shareholder value, including, but not limited to, a merger or acquisition of Iowa Telecom;

(ii)    Adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligation to maximize shareholder value or, in the event such conflicts exist, to ensure that all conflicts of interest are resolved in the best interests of the public stockholders of Iowa Telecom;

E.    Act independently so that the interests of the Company's public stockholders will be protected;

F.    Rescinding the Proposed Merger, if implemented;

G.    Awarding costs and disbursements, including Plaintiff's counsel's fees and experts' fees; and

H.    Granting such other and further relief as to the Court may seem just and proper.

## JURY DEMAND

COMES NOW the Plaintiff, Sanjay Israni, Individually, and on behalf of all others similarly situated, and demands trial by jury on all counts alleged in his Class Action Complaint.

/s/ **THOMAS J. DUFF**
**DUFF LAW FIRM, P.L.C.**
THOMAS J. DUFF (ICIS# AT0002229)
The Griffin Building
319 Seventh Street, Suite 600
Des Moines, Iowa 50309
Telephone: (515) 283-1111
Fax: (515) 282-0477

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
Gregory M. Nespole, Esq.
Gustavo Bruckner, Esq.
Rachel S. Poplock, Esq.
270 Madison Avenue
New York, New York 10016
(212) 545-4600 (t)
(212) 545-4563 (f)

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
Adam J. Levitt, Esq.
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000 (t)
(312) 984-0001 (f)

**LAW OFFICES OF MARC S. HENZEL**
Marc S. Henzel, Esq.
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004
(610) 660-8000 (t)
(610) 660-8080 (f)

*Counsel for Plaintiff*
 *and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on **December 16, 2009**, I electronically filed the foregoing with the

Clerk of Court using the ECF system.

/s/ THOMAS J. DUFF
THOMAS J. DUFF (ICIS # AT0002229)
DUFF LAW FIRM, P.L.C.
The Griffin Building
319 Seventh Street, Suite 600
Des Moines, Iowa 50309
Telephone:  (515) 283-1111
Fax:  (515) 282-0477
E-mail:  tom@tdufflaw.com